UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ROSEMARY BUENO, | No. 2:13-cv-0955-KJN |
| Plaintiff, | |
| v. | ORDER |
| COMMISSIONER OF SOCIAL SECURITY, | |
| Defendant. | |

Plaintiff seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying plaintiff's application for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act ("Act").[1]  In her motion for summary judgment, plaintiff principally contends that the Commissioner erred by finding that plaintiff was not disabled from September 11, 2010, plaintiff's alleged disability onset date, through the date of the final administrative decision.  (ECF No. 18.)  The Commissioner filed an opposition to plaintiff's motion and a cross-motion for summary judgment.  (ECF No. 19.)  Plaintiff did not file an optional reply brief.

////

---

[1] This case was referred to the undersigned pursuant to E.D. Cal. L.R. 302(c)(15).  Both parties consented to proceed before a United States Magistrate Judge for all further proceedings and entry of final judgment pursuant to 28 U.S.C. § 636(c).  (ECF Nos. 6, 9.)

For the reasons that follow, the court grants plaintiff's motion for summary judgment in part, denies the Commissioner's cross-motion for summary judgment, and remands the case for further proceedings under sentence four of 42 U.S.C. § 405(g).

I. BACKGROUND

Plaintiff was born on January 26, 1961; has completed two years of college and a paralegal certificate; and previously worked as a legal secretary/legal assistant and a bank teller.[2] (Administrative Transcript ("AT") 42, 58, 76-77, 211.) On January 19, 2011, plaintiff applied for DIB, alleging that she was unable to work as of September 11, 2010, primarily due to vertigo, hearing loss, and Meniere's disease.[3] (AT 19, 76-77, 210.) Plaintiff's application was denied initially on July 19, 2011. (AT 81-85.) Upon plaintiff's request for reconsideration, that determination was affirmed on November 8, 2011. (AT 87-91.) Thereafter, plaintiff requested a hearing before an administrative law judge ("ALJ"), which took place on October 23, 2012, and at which plaintiff (represented by an attorney) and a vocational expert ("VE") testified. (AT 38-65.)[4]

In a decision dated November 2, 2012, the ALJ determined that plaintiff had not been under a disability, as defined in the Act, from September 11, 2010, plaintiff's alleged disability onset date, through the date of the ALJ's decision. (AT 19-32.) The ALJ's decision became the

---

[2] Because the parties are familiar with the factual background of this case, including plaintiff's medical history, the court does not exhaustively relate those facts in this order. The facts related to plaintiff's impairments and treatment will be addressed insofar as they are relevant to the issues presented by the parties' respective motions.

[3] According to the Mayo Clinic, "Meniere's disease is a disorder of the inner ear that causes spontaneous episodes of vertigo – a sensation of a spinning motion – along with fluctuating hearing loss, ringing in the ear (tinnitus), and sometimes a feeling of fullness or pressure in your ear. In many cases, Meniere's disease affects only one ear. People in their 40s and 50s are more likely than people in other age groups to develop Meniere's disease, but it can occur in anyone, even children. Although Meniere's disease is considered a chronic condition, various treatment strategies can help relieve symptoms and minimize the disease's long-term impact on your life." See http://www.mayoclinic.org/diseases-conditions/menieres-disease/basics/definition/con-20028251.

[4] An earlier hearing was conducted on June 12, 2012, but the ALJ continued that hearing to provide plaintiff with an opportunity to obtain counsel. (AT 66-75.)

final decision of the Commissioner when the Appeals Council denied plaintiff's request for review on March 15, 2013. (AT 1-6.) Plaintiff then filed this action in federal district court on May 14, 2013, to obtain judicial review of the Commissioner's final decision. (ECF No. 1.)

## II.   ISSUES PRESENTED

Plaintiff raises the following issues: (1) whether the ALJ improperly evaluated the medical opinion evidence; (2) whether the ALJ erroneously found that plaintiff did not meet a listing; and (3) whether the ALJ improperly discounted plaintiff's testimony regarding the nature and extent of her functional limitations.[5]

## III.   LEGAL STANDARD

The court reviews the Commissioner's decision to determine whether (1) it is based on proper legal standards pursuant to 42 U.S.C. § 405(g), and (2) substantial evidence in the record as a whole supports it. Tackett v. Apfel, 180 F.3d 1094, 1097 (9th Cir. 1999). Substantial evidence is more than a mere scintilla, but less than a preponderance. Connett v. Barnhart, 340 F.3d 871, 873 (9th Cir. 2003). It means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Orn v. Astrue, 495 F.3d 625, 630 (9th Cir. 2007), quoting Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005). "The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities." Edlund v. Massanari, 253 F.3d 1152, 1156 (9th Cir. 2001) (citation omitted). "The court will uphold the ALJ's conclusion when the evidence is susceptible to more than one rational interpretation." Tommasetti v. Astrue, 533 F.3d 1035, 1038 (9th Cir. 2008).

////
////
////
////

---

[5] Plaintiff's brief raised these issues in a somewhat different order. However, in order to meaningfully review the ALJ's determinations regarding listing at step three as well as plaintiff's credibility in general, it is first necessary to determine whether the medical opinion evidence was properly weighed and considered. Accordingly, the court has set forth the issues presented in a manner that more logically comports with the sequential evaluation process.

IV.     DISCUSSION

A.      Summary of the ALJ's Findings

The ALJ evaluated plaintiff's entitlement to DIB pursuant to the Commissioner's standard five-step analytical framework.[6] As an initial matter, the ALJ found that plaintiff met the insured status requirements of the Act through December 31, 2014. (AT 21.) At step one, the ALJ found that plaintiff had not engaged in substantial gainful activity since September 11, 2010, plaintiff's alleged disability onset date. (Id.) At step two, the ALJ found that plaintiff had the following severe impairments: hearing loss and vertigo. (Id.) However, at step three, the ALJ found that plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. (AT

---

[6] Disability Insurance Benefits are paid to disabled persons who have contributed to the Social Security program. 42 U.S.C. §§ 401 et seq. Supplemental Security Income is paid to disabled persons with low income. 42 U.S.C. §§ 1382 et seq. Both provisions define disability, in part, as an "inability to engage in any substantial gainful activity" due to "a medically determinable physical or mental impairment. . . ." 42 U.S.C. §§ 423(d)(1)(a) & 1382c(a)(3)(A). A parallel five-step sequential evaluation governs eligibility for benefits under both programs. See 20 C.F.R. §§ 404.1520, 404.1571-76, 416.920 & 416.971-76; Bowen v. Yuckert, 482 U.S. 137, 140-42 (1987). The following summarizes the sequential evaluation:

> Step one: Is the claimant engaging in substantial gainful activity? If so, the claimant is found not disabled. If not, proceed to step two.
>
> Step two: Does the claimant have a "severe" impairment? If so, proceed to step three. If not, then a finding of not disabled is appropriate.
>
> Step three: Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App. 1? If so, the claimant is automatically determined disabled. If not, proceed to step four.
>
> Step four: Is the claimant capable of performing his past relevant work? If so, the claimant is not disabled. If not, proceed to step five.
>
> Step five: Does the claimant have the residual functional capacity to perform any other work? If so, the claimant is not disabled. If not, the claimant is disabled.

Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995).

The claimant bears the burden of proof in the first four steps of the sequential evaluation process. Bowen, 482 U.S. at 146 n.5. The Commissioner bears the burden if the sequential evaluation process proceeds to step five. Id.

4

24.)  Before proceeding to step four, the ALJ assessed plaintiff's residual functional capacity ("RFC") as follows:

> After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except she can stand or walk up to two hours, and sit up to six hours.  She can lift or carry 20 pounds occasionally, 10 pounds frequently.  She can occasionally climb ramps or stairs, balance, stoop, kneel, and crouch but never climb ladders, ropes or scaffolds or crawl.  She is limited in overhead reaching.  She should avoid work around hazards, such as moving machinery or unprotected heights.  She cannot work around excessive noise in a workplace.

(AT 25.)

At step four, the ALJ found that plaintiff was capable of performing her past relevant work as a legal secretary.  (AT 30.)  Alternatively, at step five, after considering plaintiff's age, education, work experience, and RFC, the ALJ found, based on the VE's testimony, that there were jobs that existed in significant numbers in the national economy that plaintiff could perform, including occupations such as receptionist, appointment clerk, and billing clerk.  (AT 31.)  Therefore, the ALJ concluded that plaintiff had not been under a disability, as defined in the Act, from September 11, 2010, plaintiff's alleged disability onset date, through the date of the ALJ's decision.  (AT 32.)

B.      Plaintiff's Substantive Challenges to the Commissioner's Determinations

  1. Whether the ALJ improperly evaluated the medical opinion evidence

Plaintiff contends that the ALJ improperly discounted the opinions of plaintiff's treating physicians, Dr. Croasdale and Dr. Kashani, and erroneously relied on the opinion of state agency physician, Dr. Leah Holly.

The weight given to medical opinions depends in part on whether they are proffered by treating, examining, or non-examining professionals.  Holohan v. Massanari, 246 F.3d 1195, 1201-02 (9th Cir. 2001); Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1995).  Ordinarily, more weight is given to the opinion of a treating professional, who has a greater opportunity to know and observe the patient as an individual.  Id.; Smolen v. Chater, 80 F.3d 1273, 1285 (9th Cir.

1996).

To evaluate whether an ALJ properly rejected a medical opinion, in addition to considering its source, the court considers whether (1) contradictory opinions are in the record; and (2) clinical findings support the opinions.  An ALJ may reject an uncontradicted opinion of a treating or examining medical professional only for "clear and convincing" reasons.  Lester, 81 F.3d at 830-31.  In contrast, a contradicted opinion of a treating or examining professional may be rejected for "specific and legitimate" reasons.  Lester, 81 F.3d at 830.  While a treating professional's opinion generally is accorded superior weight, if it is contradicted by a supported examining professional's opinion (supported by different independent clinical findings), the ALJ may resolve the conflict.  Andrews v. Shalala, 53 F.3d 1035, 1041 (9th Cir. 1995) (citing Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir. 1989)).  The regulations require the ALJ to weigh the contradicted treating physician opinion, Edlund, 253 F.3d at 1157,[7] except that the ALJ in any event need not give it any weight if it is conclusory and supported by only minimal clinical findings.  Meanel v. Apfel, 172 F.3d 1111, 1114 (9th Cir. 1999) (treating physician's conclusory, minimally supported opinion rejected); see also Magallanes, 881 F.2d at 751.  The opinion of a non-examining professional, without other evidence, is insufficient to reject the opinion of a treating or examining professional.  Lester, 81 F.3d at 831.

In this case, plaintiff's treating physicians, Dr. Croasdale and Dr. Kashani, each submitted a "Dizziness Medical Source Statement" on May 18, 2012, and May 21, 2012, respectively.  (AT 428-31, 432-35.)

Dr. Croasdale diagnosed plaintiff with Meniere's disease and hearing loss due to vertigo, indicating that plaintiff would have about 3-4 dizziness episodes per week lasting from several minutes to hours, with precipitating factors listed as stress, sudden movements, and up and down motion.  (AT 428.)  Associated symptoms were noted to be nausea/vomiting, malaise, sensitivity to noise, hot flashes, mood changes, mental confusion/inability to concentrate, fatigue/exhaustion,

---

[7] The factors include: (1) length of the treatment relationship; (2) frequency of examination; (3) nature and extent of the treatment relationship; (4) supportability of diagnosis; (5) consistency; and (6) specialization.  20 C.F.R. § 404.1527.

1   and falling, with after effects such as confusion, exhaustion, irritability, and anxiety lasting from
2   minutes to hours.  (AT 429.)  Dr. Croasdale opined that plaintiff could operate a motor vehicle,
3   but could not work at heights or with power machines; would require unscheduled breaks during
4   an 8-hour workday, each lasting a minimum of 30 minutes; would likely be off task 25% or more
5   of the workday; was incapable of even low stress work; and would be absent from work more
6   than four days per month.  (AT 429-30.)  He added that, as a result of vertigo spells, plaintiff was
7   "unable to stand, walk, lift, bend, stoop, sit for long periods of time.  Patient has profound hearing
8   loss, noise sensitivity."  (AT 431.)

9          Dr. Kashani also diagnosed plaintiff with Meniere's disease and profound hearing loss due
10  to vertigo, indicating that plaintiff would have about 3-4 dizziness episodes per week lasting from
11  minutes to hours, which could manifest suddenly.  (AT 432.)  Associated symptoms were noted
12  to be nausea/vomiting, malaise, photosensitivity, sensitivity to noise, hot flashes, mood changes,
13  mental confusion/inability to concentrate, and falling, with after effects such as confusion,
14  exhaustion, irritability, and anxiety lasting from minutes to hours.  (AT 433.)  Dr. Kashani opined
15  that plaintiff could operate a motor vehicle, but could not work at heights or with power
16  machines; needed more supervision at work than an unimpaired worker; would require
17  unscheduled breaks during an 8-hour workday, each lasting from minutes to potentially "bedrest";
18  would likely be off task 25% or more of the workday; was incapable of even low stress work; and
19  would be absent from work more than four days per month.  (AT 433-34.)  He further noted:
20  "unable to balance herself, difficulty walking, cannot bend, stoop or lift which can bring on
21  vertigo attack, sensitivity to noises."  (AT 435.)

22         The ALJ legitimately discounted the opinions of Dr. Croasdale and Dr. Kashani.  As an
23  initial matter, the four-page form "Dizziness Medical Source Statements" completed by these
24  physicians are conclusory and unsupported by any specific clinical findings, objective test results,
25  or meaningful rationale in support of the severe limitations assessed.  Meanel, 172 F.3d at 1114
26  (treating physician's conclusory, minimally supported opinion rejected); see also Magallanes, 881
27  F.2d at 751.
28  ////

7

Furthermore, as the ALJ observed, Dr. Croasdale's severe May 18, 2012 opinion conflicts with his previous October 10, 2011 treatment note in which he stated that, although plaintiff had chronic long-term Meniere's disease, she showed excellent stability adaptation and "may pursue employment." (AT 29, 417.) In January 2011, Dr. Kashani, whose treatment notes were largely cursory and illegible, also apparently told plaintiff that she did not have Meniere's disease, and curiously instructed her "not to worry about it and to continue treatment with Dr. Croasdale." (AT 344.) Additionally, the ALJ correctly observed that at least some of the symptoms noted on the "Dizziness Medical Source Statements" were not mentioned in the treatment records or were denied by plaintiff in the course of most doctor's visits. (AT 29-30.)

Finally, the ALJ also reasonably questioned the fact that the "Dizziness Medical Source Statements" completed by Dr. Croasdale and Dr. Kashani closely mirrored each other, given that some of the handwriting on the respective forms looked the same. (AT 30.) Contrary to plaintiff's argument, the ALJ did not need to be a handwriting expert to find that the same handwriting appeared on certain portions of both forms, which is obvious from a cursory review of the forms. (Compare AT 428-31 to AT 432-35.) The handwriting overlap at least plausibly suggests that plaintiff, or a representative of plaintiff, partially completed the forms for the doctors, which may undermine the reliability and professional independence of the opinions. As such, the ALJ properly considered the handwriting overlap as one of the factors in his evaluation of these doctors' opinions.

Even though the court finds that the ALJ provided specific and legitimate reasons for discounting the opinions of Dr. Croasdale and Dr. Kashani, the court ultimately cannot conclude that the ALJ's RFC is supported by substantial evidence. The ALJ in this case did not request a consultative examination of plaintiff. In formulating plaintiff's RFC, the ALJ relied primarily on the opinion of a non-examining state agency physician, Dr. Leah Holly. (AT 29, 383-90.)[8] To be

---

[8] The court finds meritless plaintiff's contention that the ALJ erroneously failed to incorporate into the RFC a prohibition on head tilting or inclination of the head in accordance with Dr. Holly's opinion. Based on apparent provocation of plaintiff's vertigo symptoms by inclination or tilting of the head, Dr. Holly assessed certain concrete functional limitations, including a complete prohibition on crawling and only occasional balancing, stooping, kneeling, and crouching, which were adopted by the ALJ. (AT 383-90.) Dr. Holly did not recommend a

sure, the opinion of a non-examining physician may constitute substantial evidence when it is consistent with other independent evidence in the record.  Tonapetyan v. Halter, 242 F.3d 1144, 1149 (9th Cir. 2001).  However, in this case, the record evidence is fairly ambiguous.  For example, on the one hand, treatment notes indicate that MRIs of plaintiff's brain and auditory canals were normal, that plaintiff's physical examinations were largely normal with intact coordination and mobility, and that plaintiff was mostly treated conservatively with medication.  (See, e.g., AT 329, 364, 367, 370, 373, 376, 380, 403, 405, 408, 411, 414, 417, 496.)  On the other hand, the treatment notes also confirm that plaintiff's objective hearing tests showed profound hearing loss in plaintiff's left ear; that she relatively consistently reported symptoms of vertigo, dizziness, ear ringing (tinnitus), and headaches; and that video nystagmography testing at Stanford revealed "abnormal tracking results, which are considered central findings, and positional nystagmus consistent with left peripheral vestibular dysfunction."  (AT 357, 488-89.)

In light of the ambiguous record, the fact that Dr. Holly did not personally examine plaintiff or review the later test results obtained at Stanford, and the fact that Dr. Holly is a family/general practice physician with no specialized knowledge of ear disorders, the court finds that the case should be remanded for a consultative examination by an ear, nose, and throat specialist, or other appropriate specialist, with full access to plaintiff's prior medical records and test results.  The ALJ may also conduct a supplemental hearing and develop the record in other respects, if necessary.

Importantly, although the court remands the case for further proceedings, the court expresses no opinion regarding how the medical opinions and other evidence should ultimately be weighed upon remand, nor any opinion regarding the ultimate question of whether plaintiff is disabled.  The ALJ may well conclude that plaintiff is not disabled, provided that the decision is supported by substantial evidence.

////

////

---

complete prohibition on head tilting or inclination of the head.

    2. Other Issues

In light of the court's conclusion that the case should be remanded for further development of the record, as outlined above, the court declines to reach plaintiff's remaining issues. On remand, the ALJ will have an opportunity to reconsider, if appropriate, his evaluation of plaintiff's credibility and whether plaintiff potentially meets or medically equals the criteria for any listing based on the augmented record.

V.  CONCLUSION

For the foregoing reasons, IT IS HEREBY ORDERED that:

1. Plaintiff's motion for summary judgment (ECF No. 18) is granted in part.

2. The Commissioner's cross-motion for summary judgment (ECF No. 19) is denied.

3. This case is remanded for further proceedings consistent with this order pursuant to sentence four of 42 U.S.C. § 405(g).

4. The Clerk of Court is directed to enter judgment for plaintiff.

IT IS SO ORDERED.

Dated: September 9, 2014

_____
KENDALL J. NEWMAN
UNITED STATES MAGISTRATE JUDGE